IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORY D. FOSTER, | : | |
| Movant/Defendant, | : | |
| v. | : | Crim. Act. No. 15-21-RGA |
| | : | Civ. Act. No. 19-985-RGA |
| UNITED STATES OF AMERICA, | : | |
| Respondent/Plaintiff. | : | |

**MEMORANDUM OPINION**

Cory D. Foster. *Pro se* Movant.

Edmond Falgowski, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware. Attorney for Respondent.

June ___, 2022
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Pending before the Court is Movant Cory Foster's *pro se* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (D.I. 123; D.I. 124) The Government filed an Answer in Opposition, to which Movant filed a Reply. (D.I. 134; D.I. 135) For the reasons that follow, Movant's § 2255 Motion is denied.

I. **BACKGROUND**

   A. **Facts Leading to Movant's Delaware Charges**

   [O]n February 5, 2015, [ ]Joseph Turchen, an employee of a barbershop in the Branmar Plaza shopping center in Wilmington, Delaware, observed what he perceived as troubling behavior by occupants of a silver Honda Accord in the shopping center parking lot. Turchen watched the Accord's two occupants for approximately twenty minutes. He testified that the man in the passenger seat had a full beard and wore a hoodie, skull cap, and dark glasses and that the man in the driver's seat was wearing a hoodie and a red or pink scarf over his face the whole twenty minutes he was sitting in the car. Turchen found the occupants' behavior suspicious because they were repeatedly looking around the strip of stores in Branmar Plaza, including the barbershop, a bank, and a jewelry store, and because he thought one of the occupant's movements indicated "he was pumping himself up to do something." Turchen also testified that the car's occupants were "dressed like they was going to go do something." He could not identify the car's occupants; he could only tell that they were two black males, one with lighter skin. His suspicions resulted in another barbershop employee calling 911 to report the suspicious behavior.

   When Delaware State Troopers arrived, Turchen saw the Accord's occupants look towards the police cars, which were at the opposite side of the parking lot. The Accord then promptly left the lot. Before the car pulled away, the barbershop's owner, Joseph Strano, got into his truck, followed the Accord, and took a picture of it and its license plate. He provided that picture to Trooper Natalie George, one of the troopers who had responded to the 911 call.

   Trooper George ran the Accord's license plate number through a police database and discovered that the car had been

reported stolen in an armed robbery. She then sent an e-mail to other troopers alerting them of that fact and attaching the picture of the Accord, which revealed a distinct bumper sticker on the rear of the car.

Trooper William Yeldell was one of the police officers who received George's e-mail. He patrolled the area around Branmar Plaza on a daily basis and the e-mail prompted him to pay particular attention to Branmar Plaza the following morning, February 6, to see if the Accord would return. It did, and he got a clear look at its occupants, but only when he passed right in front of it, dressed in full uniform in an unmarked police car. At that point, he made direct eye contact with those individuals. He saw that the one in the passenger seat was wearing glasses, a red or pink scarf, and a white button-up shirt, and that the one in the driver's seat was a black male with facial hair and a black jacket over a purple shirt. At trial, Yeldell identified the man in the passenger seat as [Movant] and the man in the driver's seat as Payton.

After passing in front of the Accord, Yeldell communicated with other state troopers over the radio that he would need assistance making a vehicle stop. He left the parking lot to meet with the troopers responding to his radio call and to put himself in a better position to make a safe stop. In doing so, he lost sight of the Accord for less than a minute. When the troopers returned to the parking lot, Yeldell noticed one of the men he had seen was now standing outside of the Accord. The second man was no longer in or near the car.

Yeldell knew, with what he described as 100% certainty, that the man outside of the car was the same one he had observed in the Accord's passenger seat. He testified that he recognized the white button-up shirt and the "light red or pink colored scarf." That individual turned out to be [Movant].

After noticing that [Movant] was holding an object in his hand, Yeldell pulled out his gun and ordered him to the ground. [Movant] ran instead. He passed another trooper, who shot him with a Taser. As he fell to the ground, "a hand gun went flying through the air." The troopers attempted to subdue [Movant], and, after a struggle, he was tased a second time. The officers then placed him in handcuffs and recovered a loaded .380 caliber black Smith & Wesson semi-automatic pistol.

*United States v. Foster*, 891 F.3d 93, 99-100 (3d Cir. 2018) (cleaned up).

2

### B. Procedural History in Delaware

On March 26, 2015, Movant had his initial appearance on a criminal complaint that charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The Magistrate Judge advised Movant, pursuant to the sentencing provisions of § 924(e), that he faced a mandatory minimum term of imprisonment of fifteen years up to a maximum of life imprisonment. (D.I. 134 at 2)

On April 28, 2015, Movant was indicted on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (D.I. 18 at 1, Count I) The indictment charged Movant as follows:

> On or about February 6, 2015, in the District of Delaware, CORY D. FOSTER, the defendant, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in the Court of Common Pleas of Montgomery County, Pennsylvania, did knowingly possess in and affecting interstate commerce, a firearm, that is, a Smith and Wesson, .380 caliber, semi-automatic pistol, model Bodyguard, serial number ECB9844, which had previously been shipped and transported in interstate commerce. All in violation of Title 18, United States Code, Sections 922(g)(l) and 924(a)(2).

(D.I. 18 at 1) The Government filed an Information Sheet paraphrasing § 924(e) and stating that the maximum penalty for the offense charged in the indictment was life imprisonment, with a minimum mandatory term of fifteen years. (D.I. 18-2)

At Movant's arraignment on May 6, 2015, the Magistrate Judge advised Movant that the maximum penalty "is a mandatory minimum term of imprisonment of 15 years up to a maximum of life imprisonment and notwithstanding any other provision of the law, the court shall not suspend the sentence or grant a probationary sentence." (D.I. 134 at 2) On June 5, 2015, Douglas L. Dolfman entered his appearance as Movant's counsel and filed a motion to suppress

3

the gun. (D.I. 26; D.I. 27) The Court held an evidentiary hearing on Movant's motion to suppress and denied the motion. (D.I. 47)

On April 28, 2016, a federal jury convicted Movant of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). (D.I. 69) This Court sentenced Movant on August 25, 2016 to the statutory maximum 120 months of imprisonment[1] followed by 3 years of supervised release.[2] (D.I. 95) The Third Circuit affirmed Movant's conviction and sentence on May 30, 2018. *See United States v. Foster*, 891 F.3d 93, 115 (3d Cir. 2018).

### C. Procedural History in Pennsylvania

On October 8, 2015, Movant was indicted in United States District Court for the Eastern District of Pennsylvania and charged with "three counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); one count of carjacking in violation of 18 U.S.C. § 2119; and four counts of using, carrying, and brandishing a firearm during and in relation to a crime of violence in

---

[1]As explained later in the Opinion, at the time of sentencing, Movant was not, in fact, subject to a minimum mandatory fifteen year sentence. *See infra* at 13-14.

[2]Since Movant possessed the firearm in connection with the commission of another offense, the Revised Presentence Investigation Report, dated August 9, 2016, ("PSR") (D.I. 85) provided multiple calculations for the offense level. As stated in the Revised PSR, "[t]he first [calculation] is singularly based on a possession of a firearm by a prohibited person. The additional calculations address the [§ 2K2.1(c)(1)] cross reference." (D.I. 85 at ¶ 20) Under the first alternative, the PSR assessed a base offense level of 24, as "the defendant committed the instant offense subsequent to sustaining at least two felony convictions for a crime of violence…robbery in 2006 and 1011." (D.I. 85 at ¶ 21) Two levels were added for stolen firearm (§ 2K2.1(b)(4)) and four levels for possessing the firearm to perpetrate a robbery (at Branmar Plaza) (§ 2K2.1(b)(6)(B)), resulting in a total offense level of 30. (D.I. 85 at ¶¶ 22, 23, 30) The second calculation, which involves the cross reference, was based on Movant using the relevant handgun "in three robberies and one carjacking in the Eastern District of Pennsylvania," and resulted in a total offense level of 33. (D.I. 85 at ¶¶ 20, 31-69) This became the final offense level, as it "is greater than that determined above." U.S.S.G. § 2K2.1(c)(1)(A). With a criminal history category of V, the guideline range of imprisonment was 210 to 262 months. However, since that range exceeded the statutory maximum of 120 months of incarceration, the range became 120 months. (D.I. 85 at ¶ 115) The parties had no objections to the PSR. (D.I. 94 at 4-5)

4

violation of 18 U.S.C. § 924(c)(1)." *United States v. Foster*, 734 F. App'x 129, 131 (3d Cir. 2018); *see also* (D.I. 1 in *USA v. Foster*, 15cr485-MAK-01). Counts One, Three, and Five charged Movant with robbery affecting interstate commerce in violation of 18 U.S.C. § 1951 on the respective dates of November 18, 2014, December 2, 2014, and December 7, 2014. (*See* D.I. 1 in *USA v. Foster*, 15cr485-MAK-01, at 1-2, 4-5, 7-8) Count Five named as victims an employee of a convenience store and one of its customers. (*See id.* at 7-8) Count Seven is related to Count Five and charged a carjacking from that customer, also on December 7, 2014, and described his car as a "2002 Honda Accord … that was recovered from … [Movant] by law enforcement in Wilmington, Delaware, on or about February 5, 2015." (*Id.* at 10) Counts One, Three, Five, and Seven each has a related charge of using, carrying and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c), respectively, Counts Two, Four, Six, and Eight. (*See* D.I. 1 in *USA v. Foster*, 15cr485-MAK-01). Each of the firearm counts described the firearm as a "black Smith and Wesson, Model M&P Bodyguard, .380 caliber semi-automatic pistol, serial number ECB9844." (*Id.* at 3, 6, 9, 11)

The same attorney who represented Movant in the criminal proceeding leading to the instant § 2255 motion also represented Movant in the criminal proceeding in the Eastern District of Pennsylvania. (*See id.* at D.I. 7 and D.I. 30) On May 26, 2016, a federal jury convicted Movant. (*See id.* at D.I. 34) The District Court for the Eastern District of Pennsylvania sentenced Movant on April 12, 2017 to a total term of 714 months, consisting of 84 months as to Count Two, 300 months as to Count Four, 300 months as to Count Eight, and 30 months as to Counts One, Three, Five and Seven, each sentence to run consecutive to each other and to the sentence imposed in Delaware. Count Six was dismissed on the Government's motion. (*See id.*

at D.I. 77) The Court of Appeals for the Third Circuit affirmed Movant's Pennsylvania convictions on May 23, 2018. *See United States v. Foster*, 734 F. App'x at 136.

## II. DISCUSSION

Movant's timely filed § 2255 Motion asserts three ineffective assistance of counsel claims with respect to his conviction in this Court: (1) counsel's failure to object to the PSR's "unsupported claims that the Smith & Wesson 380 was [the] same gun from [the] PA offenses," and counsel's failure to object to the application of the § 2K2.1(c) (1) cross reference, which caused the sentencing range of 63 to 78 months to be increased to a range of 210 to 262 months. (D.I. 123 at 4, D.I. 124 at 9-12); (2) counsel failed to present expert testimony regarding Tasers (D.I. 123 at 5; D.I. 124 at 13-15); and (3) counsel initially incorrectly advised Movant that a fifteen year mandatory minimum sentence applied to his offense and also failed to inform Movant about the option of entering an open plea (D.I. 123 at 6; D.I. 124 at 16).

Movant has properly raised his ineffective assistance of counsel allegations in a § 2255 motion. *See Massaro v. United States,* 538 U.S. 500 (2003). As a general rule, ineffective assistance of counsel claims are reviewed pursuant to the two-pronged standard established in *Strickland v. Washington,* 466 U.S. 668 (1984). Under the first ("performance") prong of the *Strickland* standard, Movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second ("prejudice") prong of the *Strickland* standard, Movant must demonstrate a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.* at 694; *United States v. Nahodil*, 36 F.3d 323, 326 (3d Cir. 1994). A court can choose to address the prejudice prong before the deficient performance prong, and reject an

ineffective assistance of counsel claim solely on the ground that the defendant was not prejudiced. *See Strickland,* 466 U.S. at 698. Finally, although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that counsel's representation was professionally reasonable. *Id.* at 689.

### A. Claim One: Counsel Failed to Object to § 2K2.1(c)(1) Enhancement

U.S.S.G. § 2K2.1(c)(1) provides, in relevant part, for a sentencing enhancement "[i]f the defendant used or possessed any firearm ... cited in the offense of conviction in connection with the commission or attempted commission of another offense[.]" U.S.S.G. § 2K2.1(c )(1). Section 2K2.1(c)(1) was amended in 2014 to limit its application only to instances in which the defendant used the exact same firearm "cited in the offense of conviction" in connection with another offense. U.S.S.G. Supp. to App. C, Amend. 784, Reason for Amendment.

As previously explained, the Court enhanced Movant's sentence pursuant to § 2K2.1(c)(1) after determining that the firearm Movant possessed during his Delaware offense was the same firearm he possessed during his Pennsylvania offenses. *See supra* at 4 n.2. In Claim One, Movant contends that defense counsel "was ineffective for failing to object to [the] PSR and [the] Government's false claims that the Smith and Wesson .380 was used in the Pennsylvania offenses, [because counsel's failure to object] activated the 2K2.1(c )(1) enhancement." (D.I. 125 at 2) According to Movant, "part of the reason [the Third Circuit] affirmed [his sentence] was because counsel did not object to the PSR's assertion [that the gun from Movant's Delaware offense was the same gun used during Movant's Pennsylvania offenses]." (D.I. 123 at 4) Movant contends that the Government and PSR investigator failed to definitively establish that the same gun was used during Movant's Delaware and Pennsylvania

7

offenses because the Government's witnesses did not conclusively testify that the gun was the same. (D.I. 124 at 9-10)

As an initial matter, Movant incorrectly asserts that the Third Circuit based its decision to affirm his sentence on defense counsel's failure to object to the Court's application of § 2K2.1(c)(1). While it is true that the Third Circuit referenced defense counsel's failure to object when explaining why it was applying a plain error standard of review to Movant's appellate challenge to his sentence enhancement, the Third Circuit thoroughly reviewed the facts when determining that at "least three categories of direct and circumstantial evidence" supported this Court's conclusion "that the Smith & Wesson recovered in Delaware was the same gun used in the Pennsylvania crimes." *Foster*, 891 F.3d at 113–15.

Additionally, Movant's argument that counsel was ineffective for not objecting to the § 2K2.1(c)(1) enhancement fails to satisfy either prong of the *Strickland* standard. The statutory maximum sentence for Movant's offense of conviction was 120 months. Consequently, even though the application of § 2K2.1(c)(1)'s cross reference to Movant's case resulted in a guidelines range of 210 to 262 months of imprisonment, Movant was sentenced to 120 months. (D.I. 87 at ¶ 114, 115) In an attempt to demonstrate prejudice, Movant argues that his guidelines range would have been 63 to 78 months without the application of § 2K2.1(c)(1)'s cross reference and, therefore, he would have received a sentence lower than his current 120 months. The record does not support Movant's assertion. As set forth in the PSR, if Movant were held accountable only for his actions in Delaware, and his offense level was calculated solely on the charge of felon in possession of a firearm without the application of § 2K2.1(c)(1)'s cross reference, his offense level would have been 30 with a corresponding guidelines range of 151 to 188 months. (D.I. 87 at 22) In other words, even without § 2K2.1(c)(1)'s enhancement,

Movant's sentencing range would have been above the statutory maximum. Given these circumstances, Movant cannot demonstrate a reasonable probability that he would have received a lower sentence but for defense counsel's failure to object to the application of § 2K2.1(c)(1).

Movant also cannot demonstrate that defense counsel's failure to object to the application of § 2K2.1(c)(1) amounted to deficient performance under *Strickland*'s first prong. An attorney does not provide ineffective assistance by failing to present meritless objections or arguments. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). On direct appeal, the Third Circuit rejected Movant's underlying argument that the Government did not meet its burden to introduce reliable evidence sufficient to support the § 2K2.1(c)(1) enhancement, explaining:

> Unlike the cases [Movant] cites, [Movant] did not object to the factual statements contained in the relevant PSRs, **and the record contains sufficient evidence to support the District Court's determination—by a preponderance of the evidence—that the gun recovered during [Movant's] arrest in Delaware was the same gun used during robberies and a carjacking he committed in Pennsylvania.**
>
> The PSR stated that the Smith & Wesson .380 caliber semi-automatic pistol gun seized at Branmar Plaza was the same gun as the one Foster used during those earlier crimes. Foster did not object to that conclusion during his sentencing proceedings but on appeal characterizes it as unsupportable. He argues that the PSR in this case relied on the PSR prepared in connection with his Eastern District of Pennsylvania convictions and that that underlying PSR only identifies the gun used in Pennsylvania as being consistent with, rather than the same as, the one recovered in Delaware. Although [Movant] is correct on that point, **the conclusion that the Smith & Wesson recovered in Delaware was the same gun used in the Pennsylvania crimes is supported by at least three categories of direct and circumstantial evidence.**
>
> First, a relatively short time separated the crimes [Movant] committed in Pennsylvania, which took place in November and

9

> December 2014, from his Delaware arrest in February 2015. It is not unreasonable to conclude that [Movant] used the same gun over that time period and kept it in his possession to perpetrate future crimes. Second, there is surveillance video from each of the Pennsylvania robberies that allows the conclusion that the gun used in those crimes and the gun recovered in Delaware are the same. Third, although the victims of the robberies could not identify with certainty that the gun recovered in Delaware—and later shown to each of them during the Eastern District of Pennsylvania trial—was the same gun they were confronted with when robbed, they each agreed that the gun looked similar. Those facts, coupled with [Movant's] failure to object to the PSR during his sentencing proceedings before the District Court, lead us to conclude that the District Court did not plainly err by applying § 2K2.1(c)(1) to enhance [Movant's] sentence.

*Foster*, 891 F.3d at 113–15 (emphasis added).

Given the Third Circuit's conclusion that there was sufficient evidence to support the § 2K2.1(c)(1) enhancement, Movant's argument that defense counsel was ineffective for failing to challenge the enhancement is meritless. Accordingly, the Court will deny Claim One.

### B. Claim Two: Counsel Failed To Present Expert Testimony On Tasers

Next, Movant asserts that defense counsel provided ineffective assistance by ignoring his request to retain an expert witness to rebut and discredit as "scientifically impossible" the police officers' testimony that they saw "a firearm go flying out of [Movant's] hand as soon as the Taser hit [him]." (D.I. 124 at 13-15) Presumably to demonstrate the feasibility of this "scientific impossibility" defense, Movant cites an internet source explaining that tasers "highjack[] the reins of the central nervous system" – "http://scienceline.org Peter Sergo Ask-sergo-tasers" – and includes a quote from an alleged taser victim stating that he could not release a gun he had in his hand after being tased "due to [his] muscles contracting." (D.I. 124 at 18-19) Movant also alleges that defense counsel's failure to pursue the "scientific impossibility" defense was due to

counsel's insufficient investigation and counsel's belief that an expert was "not worth the cost." (D.I. 124 at 13-14)

Movant's argument is unavailing. As a general rule, "[w]itness selection is entrusted to counsel's sound judgment, not to the defendant," and an attorney's reasonable strategic decision concerning which witnesses to call must be accorded high deference. *Manchas v. Superintendent of SCI Huntington*, 428 F. App'x 184, 190 (3d Cir. 2011). An ineffective assistance of counsel claim based on counsel's alleged failure to investigate a potential witness can only succeed by demonstrating that the witness' testimony would have been favorable and material. Mere speculation about a witness' possible testimony is insufficient to satisfy the prejudice prong of *Strickland*. *See United States v. Gray*, 878 F.2d 702, 712 (3d Cir.1989); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir.1991). In addition, the favorable testimony must have been "forthcoming or available." *Zettlemoyer*, 923 F.2d at 298.

Here, although Movant cites to the internet and provides the name of two individuals with some knowledge about and/or experience with Tasers, he does not explicitly assert that these two individuals are experts on the effects of Tasers who would have testified at his trial, nor does he describe the specific testimony that they would have given at trial. At most, Movant's vague reference to these two individuals amounts to mere speculation that there is some expert who could offer testimony that would contradict the eyewitness testimony provided by the Delaware police officers. Such speculation fails to demonstrate prejudice under *Strickland*. To the extent Movant blames counsel's failure to retain a Taser expert on expense or counsel's failure to investigate, his vague unsupported assertions are insufficient to satisfy either prong of the *Strickland* standard.

11

Finally, referring to the inconclusive fingerprint evidence and the lack of DNA evidence obtained from the gun, Movant attempts to establish prejudice by arguing that the "misleading" police testimony was the only direct link between Movant and the gun that was recovered from Branmar Plaza. The Court is not persuaded. Despite the lack of DNA evidence and the inconclusive fingerprint evidence, the overwhelming evidence against Movant precludes him from demonstrating a reasonable probability that the result of his trial would have been different but for defense counsel's failure to retain an expert witness on Tasers: (1) testimony placing Movant at Branmar Plaza in a stolen car and engaging in suspicious activity on the day prior to the day of his arrest; (2) testimony placing Movant at Branmar Plaza on the day of his arrest in the same stolen car; (3) the discovery of a loaded rifle, two rolls of duct tape, and a large bag on the back seat of the stolen car; (4) testimony that Movant's co-defendant exited the stolen car and fled from the area when a state trooper drove by the car; (5) testimony that Movant was seen standing outside of the stolen car with something in his hand, and that he ignored a police order to get on the ground and fled a short distance before being tased; and (6) testimony that a gun came out of Movant's hand and fell to the ground after Movant was tased and while his body was falling to the ground. *See Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999) (explaining that a court must consider the strength of the evidence against the accused when deciding if the *Strickland* prejudice prong has been satisfied). Accordingly, the Court will deny Claim Two.

### C. Claim Three: Counsel Improperly Advised Movant About the Applicable Sentence and Failed to Inform Movant About an Open Plea

In Claim Three, Movant contends that defense counsel provided ineffective assistance by incorrectly informing Movant that he was facing a mandatory minimum sentence of fifteen years and by failing to advise Movant about the possibility of entering an "open plea" of guilt without agreeing to any particular plea agreement stipulations. Movant asserts that defense counsel's

failure to inform him about an open plea deprived him of a potential 3-point reduction in his offense level for acceptance of responsibility under U.S.S.G. § 3E1.1. According to Movant, the imposition of a "120 month sentence […] that is significantly different from the 180 months [defense counsel] said was 'absolutely mandatory'" creates "more than a substantial probability" that the "outcome would have been different" had defense counsel advised Movant "of the correct guidelines and the 3-point downward adjustment for 'acceptance of responsibility.'" (D.I. 124 at 16)

Movant's argument is unavailing. To the extent defense counsel may have initially advised Movant that he faced a fifteen year mandatory minimum sentence,[3] defense counsel's sentencing assessment was presumably based on: (1) the Information Sheet filed by the Government which stated that Movant faced a mandatory minimum fifteen year sentence under 18 U.S.C. § 924(c) due to his three prior Pennsylvania convictions for "crimes of violence"[4] (D.I. 18-2 at 1; D.I. 134 at 15); and (2) the Magistrate Judges' statements during Movant's initial appearance and arraignment that Movant faced a fifteen year mandatory minimum term of incarceration. (D.I. 134 at 15) However, developing caselaw between Movant's trial and sentencing convinced the Government that Movant's Pennsylvania burglary conviction was not a predicate "crime of violence" under 18 U.S.C. § 924(c), which meant that, if convicted of violating 18 U.S.C. § 922(g)(1), Movant faced a statutory maximum sentence of 120 months rather than a mandatory minimum sentence of fifteen years. (D.I. 134 at 15 n. 2, citing *United*

---

[3] Since the Government did not request to have defense counsel respond to Movant's allegations, the Court does not know the actual sentencing assessment counsel provided to Movant. For the sake of argument, the Court accepts Movant's assertion as correct.

[4] Upon the return of the Indictment, the Government filed a Defendant Information Sheet notifying Movant and the Court that Movant faced a mandatory minimum fifteen year sentence because each of Movant's prior three Pennsylvania convictions was a predicate "crime of violence" under 18 U.S.C. § 924(c). (D.I. 18-2 at 1)

*States v. Peppers*, 899 F.3d 211, 234-36 (3d Cir. 2018) (holding that burglary in violation of Pennsylvania law does not qualify under the enumerated offense provisions of ACCA)). When viewed in this context, the Court concludes that defense counsel's initial sentencing assessment that Movant faced a fifteen-year mandatory minimum sentence did not constitute deficient performance under *Strickland*'s first prong. Movant has also failed to demonstrate any prejudice resulting from defense counsel's alleged assessment, because Movant neither accepted nor declined any plea offer while operating under this initial sentencing assessment, and he was not sentenced to a mandatory minimum fifteen years of incarceration.

      Movant also cannot demonstrate that he was prejudiced by defense counsel's failure to advise him about the possibility of entering an open plea. Contrary to his belief, Movant would not have been entitled to a § 3E1.1 reduction as a matter of right simply by entering a plea, and he has not provided any facts to support his assertion that entering an open plea would have resulted in a lesser sentence for acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. 3 ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right."). In turn, Movant incorrectly assumes that a 3-level acceptance of responsibility reduction in his offense level would have reduced his sentencing range below the statutory maximum 120 months. According to the PSR, Movant's offense level was 33 with a criminal history category of V, resulting in a sentencing range of 210 to 260 months. (D.I. 87 at ¶ 115) Reducing his offense level by 3 levels to 30 would have produced a sentencing range of 151 to 188 months, which is still significantly greater than the 120-month (statutory maximum) sentence he received.

      Additionally, Movant does not affirmatively assert that he would have entered an open plea but, rather, merely alleges that he "*could* have pled guilty to an open plea." (DI. 123 at 6)

14

(emphasis added). Given his continued insistence – during trial and in this proceeding – that he did not have a gun in his possession at the time of the Branmar Plaza incident,[5] Movant cannot demonstrate a reasonable probability that he would have entered into an open plea had counsel informed him of the option. *See United States v. Gonzalez-Rivera*, 217 F. App'x 166, 169 (3d Cir. 2007) (holding that the "alleged prejudice that [the petitioner] may have suffered [as a result of counsel's failure to advise him about an open plea] . . . is far too speculative, because his contention that he would have accepted a guilty plea was "belied" by the fact that he "maintained his innocence throughout the [trial] proceedings and therefore was not willing . . . to plead guilty to the charges against him.").

Accordingly, the Court will deny Claim Three.

### III.   MOTION FOR THE APPOINTMENT OF COUNSEL

During the pendency of this proceeding, Movant filed a letter motion asking the Court to appoint counsel. (D.I. 125) In support of his request, Movant asserts a single sentence explanation that he "know[s his] grounds have merit and [he] really could use the assistance of a competent lawyer." (D.I. 125 at 1) Having concluded that the Claims in the instant Motion lack merit, the Court will dismiss as moot Movant's Motion for the Appointment of Counsel.

### IV.   EVIDENTIARY HEARING

A district court is not required to hold an evidentiary hearing on a motion filed pursuant to 28 U.S.C. § 2255 if the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d

---

[5]During trial, Movant's theory of defense was that the police fabricated a "capricious story" about him possessing the gun at the time of Branmar Plaza incident and that nothing connected him to the gun that was introduced as evidence during the trial. (D.I. 91 at 105-112 ) The arguments in Claims Two and Three of this proceeding essentially promote the same defense theory that Movant was not in possession of any gun at the time of his arrest.

542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255. As previously discussed, the record conclusively demonstrates that Movant is not entitled to relief under § 2255. Therefore, the Court concludes an evidentiary hearing is not warranted.

## V. CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2255 motion must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate only if the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The movant must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court is denying Movant's § 2255 Motion after determining that his ineffective assistance of counsel Claims lack merit. The Court is persuaded that reasonable jurists would not find this assessment debatable. Therefore, the Court will not issue a certificate of appealability.

## VI. CONCLUSION

The Court concludes that Movant is not entitled to relief pursuant to 28 U.S.C. § 2255. An appropriate Order will issue.